IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOHN SCOTT JOHNSON,

       Plaintiff,

v.                               CIVIL ACTION NO.  2:13-CV-23854

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.  This case is presently pending before the court on cross-motions for judgment on the pleadings.  Both parties have consented to a decision by the United States Magistrate Judge.

Claimant, John Scott Johnson, filed an application for disability insurance benefits (DIB) on February 5, 2010.  The claim was denied initially on August 3, 2010, and upon reconsideration on November 12, 2010.  Claimant filed a request for hearing on November 16, 2010.  A hearing was held on January 11, 2012, in Huntington, West Virginia.  The Administrative Law Judge (ALJ) denied Claimant's application on February 24, 2012.  The Appeals Council denied Claimant's request for review on November July 24, 2013.  Claimant filed a complaint for review of the decision in federal court September 27, 2013 (ECF No. 1).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically

determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity during the period of time from his alleged onset date of January 1, 2008, through his date last insured (DLI) of June 1, 2008 (Tr. at

15).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of post traumatic and degenerative arthritis, chronic neck/back pain and depression.  (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  The ALJ then found that Claimant has a residual functional capacity for sedentary work with a sit/stand option, as well as no overhead reaching with the dominant right hand/arm; no pushing/pulling with the dominant right arm; no limitations on use of the left arm; only occasional bending, stooping, squatting, kneeling, crouching or crawling; no exposure to heights; occasional climb stairs; no phone work; and no concentration exposure to dust, fumes, odors or extreme temperature changes.  Mentally, he should have only occasional contact with co-workers with no tandem tasks and have no contact with people (Tr. at 19).  The ALJ held that Claimant was unable to perform any past relevant work (Tr. at 23).  Nevertheless, the ALJ concluded that Claimant could perform jobs such as laminator, type/copy examiner and ink printer (Tr. at 24).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v.Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

3

Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was thirty-nine years old when his insured status expired on June 30, 2008. Claimant has a high school education and past relevant work experience as a roofer, construction laborer, dishwater and cleaner (Tr. at 23). At the time of the hearing, on January 11, 2012, Claimant worked part-time at Cracker Barrel washing dishes for "about 21 hours a week" (Tr. at 46). Claimant's wife had been without work for approximately 4 months prior to the hearing. By the time of the hearing, Claimant's wife had obtained employment. *Id*.

Claimant possesses a current driver's license (Tr. at 49). He testified to driving 22 minutes or more to the hearing. He was previously on home confinement in 2009 for participating in an altercation (Tr. at 50). Claimant testified to receiving unemployment for over a year in or around 2009 (Tr. at 51).

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence (ECF No. 9). Claimant asserts that "his testimony is entitled to full credibility because his exertional and non-exertional impairments are disabling in nature. Neglecting to properly analyze the evidence and the [Claimant's] veracity, the Administrative

Law Judge instead relied on hackneyed credibility 'boilerplate' and regurgitated that the [Claimant's]…'statements concerning the intensity, persistence and limiting effects of these symptoms are not credible…'" Claimant further asserts that the ALJ did not fairly and reasonably evaluate [his] credibility in light of the medical evidence, statutory law, applicable Social Security Rulings and Regulations, and current case law.  Lastly, Claimant asserts that the ALJ erred by failing "to consider the requirements of SSR 96-9p: Policy Interpretation Ruling Titles II and XVI: Determining Capability To Do Other Work-Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work in as much as the ALJ found Claimant limited to less than a full range of sedentary work" (ECF No. 9).

Defendant asserts that substantial evidence supports the ALJ's finding that Claimant could perform the limited range of sedentary work identified by the vocational expert (ECF No. 10).  Defendant asserts that the ALJ fully explained in her decision why she did not find Claimant fully credible.  Defendant further asserts that the ALJ pointed out that Claimant continued to work full-time performing manual labor around the relevant period, therefore, she "amply discussed" her reasons for not finding Claimant's subjective complaints fully credible. Lastly, Defendant asserts that not one treating or examining source placed any work-related limitations on Claimant.

<u>Discussion</u>

Claimant had two surgeries to his right shoulder area, a right shoulder arthroscopic reconstruction in 2003 associated with mild glenohumeral arthritis, and a resurfacing arthroplasty in August 2005 for progression of Claimant's pain complaints.  On October 27, 2005, Luis E. Bolano, M.D., noted that Claimant was 2.5 months post-operation and was doing well without any complaints (Tr. at 461).  Claimant demonstrated full range of motion with little pain and exhibited good strength. *Id.*

On November 20, 2007, Claimant was seen by Rockford Meadows, M.D., with University Physicians & Surgeons, in Huntington, West Virginia, and denied "focal weakness, clumsiness of hands, but did state that he had neuropathic pain that radiated to his arms bilaterally" (Tr. at 16).  Claimant's post reconstructive surgery to his right should was stable "with his current narcotic regimen, which allows him to maintain full-time employment in manual labor."

In January 2008, Claimant returned for a follow-up visit with Dr. Meadows presenting complaints of chronic pain.  Claimant reported to be working full time (Tr. at 227).  In April 2009, approximately one year after Claimant's insured status had expired, Claimant saw Scott Davis, M.D., with University Physicians and Surgeons, complaining of neck pain which radiates across to his right shoulder.  Claimant reported experiencing "sharp stabbing pain" (Tr. at 210).  Claimant reported that he had not experienced an injury but had "started back to work with construction company." *Id.* Claimant denied significant weakness, numbness, tingling, paresthesia or dropping objects.  Claimant requested a prescription of Lortab.

Claimant saw Dr. Meadows again in April of 2010, at which time he reported that he was feeling fine. On August 3, 2010, Frank Roman, Ed.D., conducted a Psychiatric Review Technique and reported insufficient evidence prior to Claimant date of last insured (DLI). On November 10, 2010, A Rafael Gomez, M.D., conducted a case analysis which reported that there was insufficient evidence prior to the date last insured in June of 2008, to assess this case.  On November 11, 2010, Paula J. Bickham, Ph.D., reviewed Dr. Roman's Psychiatric Review Technique and all the evidence in the file and affirmed the review as written (Tr. at 300).

<u>Credibility</u>

A two-step process is used to determine whether a claimant is disabled by pain.  First,

objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see also, Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. *Craig*, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2014). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2014).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186, at *2.  416.920(c).

*Craig* and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself.  *Craig*, 76 F.3d at 585, 594; SSR 96-7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record").  For example, the allegations of a person who has a condition capable of

8

causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. *Craig*, 76 F.3d at 595. Nevertheless, *Craig* does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which *Craig* prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

Claimant asserts that:

> Based on the evidence of record, it is apparent that the exacting requirements of the Social Security Disability Reform Act of 1984 have been met. This "mutually supportive test" was recognized in *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987), and should be applied in the instant case to allow the Plaintiff the ability to satisfy the rigors of 42 U.S.C. § 423(d)(5)(A). The standards enunciated in the Reform act are as follows:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings) would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or, laboratory techniques (for example, deteriorative nerve or muscle tissue), must be considered in reaching a conclusion as to whether the individual is under a disability.

Social Security Ruling 96-7p provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered"

> or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight of the adjudicator gave to the individual's statements and the reasons for that weight.

In the present matter, Claimant asserts that the ALJ used "boilerplate" credibility language which warrants a remand (ECF No. 9). Claimant assert that the "boilerplate" language provides no basis to determine what weight the ALJ gave Claimant's testimony.

The ALJ's thorough credibility analysis spans over approximately four pages in the ALJ's decision (Tr. at 19-23). The ALJ compared and contrasted Claimant's assertions and testimony. The ALJ discussed Claimant working as an iron worker around the relevant time period of his alleged disability onset (Tr. at 22). The ALJ discussed the opinion evidence of record and stated that "the only opinions of record are those of the state agency medical consultants, who after review of the evidence of record as a whole, found insufficient evidence prior to his date last insured to assess any impairment of limitation" (Tr. at 23). The ALJ concluded by stating that she has "granted the claimant the maximum benefit of the doubt in regard to his right shoulder problems and neck/back pain," therefore she limited him to less than a full range of sedentary level exertion. *Id.*

### Substantial Evidence on the Record as a Whole

"[Judicial] review of a decision of the Commissioner . . . in a disability benefits case is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole.". *Raney v. Barnhart*, 396 F.3d 1007, 1009 (8th Cir. 2005). While not required to discuss every piece of evidence, an ALJ should discuss evidence that, if believed,

could lead to a finding of disability. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); 20 C.F.R. § 404.1523 (2013); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (per curiam); *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (Determination of whether substantial evidence supports decision in social security disability case requires reviewing court to consider not only evidence in the record that supports Commissioner's determination, but also any evidence that detracts from that conclusion.); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) (In reviewing the Social Security Commissioner's denial of Supplemental Security Income (SSI) benefits for a disability, the court may not examine only the evidence favorable to the Commissioner; it must also examine contrary evidence.); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

In the present case, the ALJ considered the evidence of record as a whole and concluded that Claimant failed to demonstrate disability.

<u>Vocational Expert</u>

While questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the

11

nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

In the present case, the ALJ asked the vocational expert (VE) to provide the exertional level for jobs Claimant has performed (Tr. at 79).  The VE stated that a roofer is at medium exertion and construction laborer is at heavy exertion. *Id.*  The VE stated that Claimant's file indicated that he has lifted over 100 pounds at times, therefore the VE stated the position of construction site cleaner is very heavy exertion.  The VE stated that the position of dishwasher is customarily medium in exertion.

The ALJ asked the VE to assume "a hypothetical individual of the claimant's age, education and work experience who can work at the level, but requires a sit/stand option with no overhead reaching with the dominant right hand and arm, no pushing or pulling with the dominant right arm, no limitations on use of the left arm, only occasional bending, stooping, squatting, kneeling, crouching or crawling, no work at heights; only occasional stairs, no concentrated exposure to dust, fumes, odors or extreme temperature changes and no phone work. Would any of claimant's past work be available?" (Tr. at 80-81).  The VE testified that Claimant could not perform any of his previous positions (Tr. at 81).

The ALJ then asked the VE if there is "Any other work available in the national or local economy?"  The VE answered yes and provided the examples of light exertional, unskilled work of monitoring a machine: collator operator, DOT number 208.685-014 with 55,000 positions nationally and 615 positions for the region (Tr. at 82).  The VE additionally stated the example of photographic machine operation, recognized under DOT number 207.685-018 with 85,000 positions nationally and 1,375 positions in the region.  *Id.*

The ALJ asked the VE to consider the same hypothetical individual and include the

following additional limitations: only occasional contact with coworkers, with no tandem tasks and no contact with the public. The ALJ asked if the jobs identified as available would change. The VE testified that the additional limitations would not have an effect on the samples provided.

The ALJ asked the VE to identify jobs that would be available if the same hypothetical individual's exertion level was changed to sedentary (Tr. at 83). The VE stated that the change in exertional level would change the jobs available to a laminator, recognized under DOT number 690.685-258 with 73,025 positions available nationally and 925 positions available regionally. *Id.* The VE also stated that a copy examiner is recognized under DOT number 979.687-026, sedentary, with 72,500 positions available nationally and 875 available regionally. Lastly, in the VE's sampling of jobs available, he stated that the position of monitoring the machine is sedentary and recognized under DOT number 652-685-038, with 71,000 positions available nationally and 775 positions available regionally.

The ALJ asked the VE what are the customary allowable absences for positions identified by the VE at either the light or sedentary level. *Id.* The VE testified that "If a person would miss more than two days a month consistently, that would not be tolerated." The ALJ asked the VE what are the customarily allowable breaks? (Tr. at 84). The VE testified that in positions working with things rather than with the public, customarily allowed is a 15 minute break in the a.m., 30-45 minute break for lunch and an additional 15 minutes in the late afternoon. The VE provided that if the position involves a job working with the general public would just have one break of half an hour to 45 minutes for lunch.

Claimant's counsel asked the VE if full credibility were given to everything Claimant testified to and was substantiated by objective medical evidence, would Claimant be able to engage in any of the jobs provided by the VE above (Tr. at 85). The VE answered "No, sir."

<u>Conclusion</u>

The court finds that the ALJ's decision is supported by substantial evidence.  The ALJ's decision does contain a thorough explanation of his credibility findings in keeping with the applicable regulation, case law and social security ruling.  20 C.F.R. § 404.1529(b)(2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).  In the ALJ's analysis of Claimant's credibility, she compares and contrasts Claimant's assertions and the evidence of record as a whole.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter:  March 31, 2015.**

Dwane L. Tinsley
United States Magistrate Judge

14